## Sealed

**Public and unofficial staff access
to this instrument are
prohibited by court order.**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

United States District Court
Southern District of Texas
FILED

**FEB 1 1 2000**

**Michael N. Milby, Clerk**

United States of America, ex rel. Daniel )
Block )
       Relator/Qui tam Plaintiff )
 )
 )
   Vs. )
 )
 ) **TO BE FILED IN CAMERA**
 ) **AND UNDER SEAL**
Laidlaw Medical Transportation, Inc )
  Reg. Agent: CT Corp System )   **C.A. H-00-1891**
  350 N. St. Paul )
  Dallas, TX 75201 ) Case Number
 ) **00-4024-CV-C-5**
 )
 )
American Medical Response, Inc. )
  Reg Agent: The Corporation Company )
  2821 So. Parker Road )
  Denver, CO 80202 )
 )
Alliance Ambulance, Inc )
  Reg. Agent: Jerry M. Smith )
  6214 Saxon )
  Houston, TX )
 )
American Medi-Coach )
  Serve: Kimberly A. Brandli )
  2105 Firestone Drive )
  League City, TX 77573 )
 )
American EMS Inc. )
  Reg Agent: Wassim Yassine )
  6606 Demoss # 1713 )
  Houston, TX 77074 )
 )
Economic Protection Strategies, Inc. )
  Reg Agent: Gregory G. Duvernay )
  11438 Caesar )
  Stafford, TX 77477 )
 )
K&K Best Care Ambulance Services, Inc. )
  Reg Agent: Svetlana Kislyuk )
  6344 Creekbend )
  Houston, TX 77096 )

Emerald Medical Services, Inc                        )
   Reg Agent:  Norman Williamson          )
   3000 N. Main, Ste 5B                       )
   Baytown, TX  77521                         )
                                                     )
Enterprise Ambulance, Inc.                           )
   Reg Agent:  Shellie Long               )
   335 E. NASA Rd. 1                          )
   Webster, TX  77598                         )
                                                     )
Excell Ambulance Corp.                               )
   Reg Agent:  Gordon E. Pattison         )
   1063 W. Moonlight Drive                    )
   Robinson, TX  76706                        )
                                                     )
Excell EMS, Inc.                                     )
   Reg Agent:  Vonnie Derose              )
   10706 Ella Lee Lane                        )
   Houston, TX  77042                         )
                                                     )
Express Care Ambulance Service, Inc.                 )
   Reg Agent  John Merritt                )
   2116 Lockwood, Suite A                     )
   Houston, TX  77020                         )
                                                     )
Genesis EMS, Inc.                                    )
   Reg Agent:  Mr. Timothy S. Brumm       )
   2003 Medway Drive                          )
   Spring, TX  77386                          )
                                                     )
Goldstar E.M.S. LLC                                  )
   Reg Agent:  Ralph D. Crall             )
   3405 College Street                        )
   Beaumont, TX  77701                        )
                                                     )
Goldstar Emergency Medical Services, Inc.            )
   Reg. Agent:  Ralph D. Crall            )
   3405 College Street                        )
   Beaumont, TX  77701                        )
                                                     )
Life Care Ambulance Service, Inc.                    )
   Reg Agent:  Craig A. Blackmon          )
   10200 Hempstead Rd. Ste 2G                 )
   Houston, TX                                )
                                                     )

2

Life Line Universal Transport, Inc.                    )
   Reg Agent:  Robert Neil Christopher     )
   3010 Rayford Rd.                        )
   Spring, TX  77386                       )
                                           )
Lifeline Ambulance, Inc                              )
   Reg. Agent:  Betth L. Redding           )
   9200 IH 35 South, #C1                   )
   Austin, TX                              )
                                           )
Metropolitan Ambulance Service, Inc                  )
   Reg Agent:  Frank Miller                )
   5612 Rampart                            )
   Houston, TX  77081                      )
                                           )
Parkvue E.M.S. Inc.                                  )
   Reg Agent:  Jonathan N. Lee, Jr.        )
   2010 Naomi, Suite # A                   )
   Houston, TX  77054                      )
                                           )
Pearl Ambulance Service                              )
   Reg Agent:  Julian Kimble               )
   6020 Jessamine                          )
   Suite 304                               )
   Houston, TX  77081                      )
                                           )
Edolia Moore, Inc.                                   )
D/b/a Personal Care EMS                              )
   Reg Agent:  Edolia Moore                )
   6945 Burgess Street                     )
   Houston, TX  77021                      )
                                           )
Prime Care Ambulance Service, Inc                    )
   Reg Agent:  William A. Shepherd         )
   5720 W. Little York                     )
   Suite 395                               )
   Houston, TX  77091                      )
                                           )
Rural/Metro of Texas, L.P.                           )
D/b/a Rural/Metro Ambulance, LP                      )
   Reg Agent:  CT Corporation System       )
   350 N. St. Paul                         )
   Dallas, TX  75201                       )
                                           )
Rural/Metro of North Texas, LP                       )
D/B/A Rural/Metro Ambulance                          )

Reg Agent:  CT Corporation System                          )
350 N. St. Paul                                            )
Dallas, TX  75201                                          )
                                                           )
R/M of Texas, GP, Inc                                      )
  Reg Agent:  CT Corp. System,                   )
  350 N. St. Paul St.                             )
  Dallas, TX  75201                               )
                                                           )
Intercare Health Services Inc.                             )
DBA Transcare EMS                                          )
  Reg Agent:  Igor Baranovski                     )
  6610 Harwin Drive, Ste 202                      )
  Houston, TX  77036                              )
                                                           )
Trans Vital Ambulance Inc.                                 )
  Reg Agent:  Emmitt T. Walton                    )
  11300 South Post Oak Road Suite 204             )
  Houston, TX  77035                              )
                                                           )
White's Ambulance Service Inc                              )
  Reg Agent:  Kenneth R. White                    )
  13194 Veteran's Memorial Drive                  )
  Houston, TX  77014                              )
                                                           )
Ultimate EMS Ambulance Service Inc.                        )
  Reg Agent:  Sunday A. Igiebor                   )
  1532 Windswept Lane, # 69                       )
  Houston, TX  77057                              )
                                                           )
HCA Health Services of Texas, Inc                          )
DBA: Spring Branch Memorial Hospital                       )
  Reg. Agent:  Prentice Hall Corporation Sys.     )
  800 Brazos                                      )
  Austin, TX  78701                               )
                                                           )
The Methodist Health Care System                           )
  Reg. Agent: R. G. Girotto                       )
  6565 Fannin St. MS D 200                        )
  Houston, TX  77030                              )
                                                           )
HNMC, Inc.                                                 )
DBA Houston Northwest Medical Center                       )
  Reg. Agent:  CT Corporation System              )
  350 N. St. Paul Street                          )
  Dallas, TX  75201                               )

Memorial Hermann Healthcare System )
   Reg. Agent: V. Randolph Gleason )
   7737 Southwest Freeway, Suite 200 )
   Houston, TX  77074 )
)
St. Lukes Episcopal Hospital )
   Reg Agent: Teska Moreau )
   6720 Bertner )
   Houston, TX )
)
Sisters of Charity of the Incarnate Word, )
Houston, Texas )
   Reg Agent: Corporation Service Company )
   120 E. Fourth Street )
   Little Rock, AR  72201 )
)
The Institute for Rehabilitation and Research )
   Reg. Agent: Kathleen A. DeSilva )
   1333 Moursund Ave. )
   Houston, TX  77030 )
)
Texas Children's Hospital )
   Reg Agent: Mark A. Wallace )
   6621 Fannin )
   Houston, TX )
)
TIRR Lifebridge )
   Reg Agent: Mary Koch )
   5100 Travis )
   Houston, TX  77002 )
)
Woman's Hospital of Texas, Incorporated )
   Reg. Agent: Prentice Hall Corporation )
System )
   800 Brazos )
   Austin, TX  78701 )
)
American Transitional Hospitals, Inc. )
   Successor to ATH Heights, Inc, successor to )
   American Transitional Care Centers of )
   Texas, Inc., DBA American Transitional )
Hospital of )
   Houston, West )
   Reg Agent: Corporation Service Co. )
   800 Brazos )

Austin, TX  78701     )
             )
Houston Specialty Hospital, Inc.  )
 DBA Plaza Specialty Hospital  )
 Reg. Agent:  CT Corporation System )
 350 N. St. Paul St.     )
 Dallas, TX  75201    )
             )
Baytown Medical Center, Inc.  DBA )
Baycoast Medical     )
Center        )
 Reg Agent:  CT Corporation System )
 811 Dallas Ave.     )
 Houston, TX 77002    )
             )
Charter Behavioral Health System of )
Southeast Texas, LP    )
DBA Charter Behavioral Health System of )
Kingwood, LP     )
 Reg. Agent:  Corporation Service Company )
 800 Brazos      )
 Austin, TX      )
             )
Rivendell Houston Psychiatric Center, Inc. )
 DBA Gulf Pines Hospitals   )
 Reg. Agent:  Corporation Service Company )
 800 Brazos      )
 Austin, TX      )
             )
Six Flags Theme Parks, Inc.   )
DBA Astroword & Six Flags Astroworld )
 Reg. Agent:  Corporation Service Company )
 800 Brazos      )
 Austin, TX      )
             )
Altman Nursing, Inc.    )
DBA Hermann Park Manor, Inc.  )
 Reg. Agent:  Mark E. Bennett  )
 4265 Kellway Circle    )
 Addison, TX  75244    )
             )
MD Anderson Cancer Center   )
PO Box 301401, Houston, TX  77250 )
             )
Rosewood Hospital     )
9200 Westheimer     )

Houston, TX  77063                                )
                                                  )
Sharpstown  General Hospital                      )
6700 Bellaire Blvd                                )
Houston, TX  77074                                )
                                                  )
Diagnostic Hospital                               )
6447 Main                                         )
Houston, TX                                       )
                                                  )
Park Plaza Hospital                               )
1300 Binz                                         )
Houston, TX                                       )
                                                  )
Harris County Hospital District                   )
5656 Kelley                                       )
Houston, TX  77026                                )
                                                  )
Healthsouth Clearlake Regional Medical            )
Center                                            )
500 Medical Center Blvd                           )
Webster, TX  77598                                )
                                                  )
Cypress Fairbanks Medical Center                  )
10655 Steepletop                                  )
Houston, TX                                       )
                                                  )
Hallmark Nursing Home                             )
4718 Hallmark                                     )
Houston, TX  77056                                )
                                                  )
Green Acres Humble                                )
Living Centers of America                         )
93 Isaacks Rd                                     )
Humble, TX  77338                                 )
                                                  )
Northline Manor NH                                )
7210 Northline                                    )
Houston, TX                                       )
                                                  )
Autumn Hills Sugarland Nursing Home               )
333 Matlage Way                                   )
Sugarland, TX  77478                              )
                                                  )
Spectrum Comprehensive Care                       )
105 Drew                                          )

Houston, TX  77006                            )
                                              )
Bayou Manor Nursing Home                      )
4141 S. Braeswood                             )
Houston, TX                                   )
                                              )
Recovery Connections                          )
6701 S. Main                                  )
Houston, TX                                   )
                                              )
Northeast Medical Center                      )
18951 Memorial N.                             )
Humble, Texas                                 )


## QUI TAM RELATORS COMPLAINT UNDER 31 U.S.C. § 3729, FEDERAL FALSE CLAIMS ACT

Comes Now Relator, by and through his counsel of record, and for his cause of action against the defendants states to the Court as follows:

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising out of the false claims presented for payment by the defendants under the Federal Medicare, Medicaid and CHAMPUS Programs. This action arises under the provisions of Title 31 U.S.C. § 3729, et seq, popularly known as the False Claims Act which provides that the United States District Courts shall have exclusive jurisdiction of actions brought under that Act.

2. Section 3732(a) of the Act provides that "Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."

3. Defendant American Medical Response of Colorado, Inc., is a Delaware Corporation with its principal place of business at 2821 S. Parker Road, Denver, Colorado, 80202.  It maintains a corporate presence and has EMS facilities and

services in Sedalia, MO. As such it transacts business in Sedalia, MO, and is subject to the venue provisions of Section 2723(a) and this action may be brought in the Central Division of the United States District Court for the Western District of Missouri, located in Jefferson City, Missouri.

4. Under the terms of the Act, this complaint is to be filed in camera and under seal and is to remain under seal for a period of at least sixty days and shall not be served on the defendants until the Court so orders. The Government may elect to intervene and proceed with the action within the sixty day time frame after it receives both the complaint and the material evidence submitted to it.

## PARTIES TO THE ACTION

5. Relator and Qui Tam Plaintiff Daniel Block, EMT-P, is a citizen and resident of Texas and brings this action on behalf of the United States Government, and will hereinafter be referred to as "Relator."

6. Laidlaw Medical Transportation, Inc., is a Delaware Corporation doing business in Texas as American Medical Response (AMR) and in Missouri as American Medical Response (AMR). It is the parent company of AMR and at all times directed AMR's business practices. It can be served with process at CT Corp. Systems, 350 N. St. Paul Street, Dallas, TX 75201. Laidlaw represents itself as the parent company of American Medical Response and, according to a press release dated September 13, 1999, is planning to divest itself of this entity in the near future.

7. American Medical Response, hereinafter alternately named AMR, American Medical Response of Texas, and American Medical Response of Colorado, is a Delaware Corporation doing business in Missouri as American Medical Response, and in Texas as American Medical Response of Texas, among other fictitious names. It can be served with process at The Corporation Company, 1675 Broadway, Denver, Colorado, 80202.

9

8.    Alliance Ambulance, Inc. is an active Texas Corporation in good standing whose registered agent is Jerry M. Smith. Alliance Ambulance, Inc., can be served with process through its agent at 6214 Saxon, Houston, TX 77092.

9.    American Medi-Coach is a Florida Corporation without a registered agent in the State of Texas or Missouri. It can be served with process through the registered owner of the fictitious name, Kimberly A. Brandli, 2105 Firestone Drive, League City, TX 77573.

10.   American EMS, Inc. is an active Texas corporation whose registered agent is Wassim Yassine. The corporation can be served with process at 6606 Demoss, # 1713, Houston, TX 77074.

11.   Economic Protection Strategies, Inc., is an active Texas corporation whose registered agent is Gregory G. Duvernay. The corporation may be served with process at 11438 Caesar, Stafford, TX 77477. On Information and belief, this defendant owns and operates Assured Ambulance.

12.   K&K Best Care Ambulance Services, Inc, is an active Texas corporation whose registered agent for service of process is Svetlana Kislyuk. The corporation may be served with process at 6344 Creekbend, Houston, TX 77096.

13.   Emerald Medical Services, Inc., is an active Texas corporation whose registered agent for service of process is Normal Williamson. The corporation may be served with process at 3000 North Main, Suite 5B, Baytown, TX 77521.

14.   Enterprise Ambulance, Inc, an active Texas corporation whose registered agent for service of process is Shellie Long. The corporation may be served with process at 335 E. NASA Road 1, Webster, TX 77598.

15.   Excell Ambulance Corp. is an active Texas corporation whose registered agent for service of process is Gordon E. Pattison. The corporation may be served with process at 1063 W. Moonlight Drive, Robinson, TX 76706.

16. Excell EMS, Inc. is an active Texas corporation whose registered agent for service of process is Vonnie Derose. The corporation may be served with process at 10706 Ella Lee Lane, Houston, Texas 77042.

17. Express Care Ambulance Service, Inc., is an inactive Texas corporation whose charter was forfeited for failure to pay franchise tax, and whose registered agent for service of process is John Merritt. The corporation may be served with process at 2116 Lockwood, Suite A, Houston, Texas 77020. On information and belief, in spite of the loss of the corporate form, the entity known as Express Care Ambulance has continued to operate as if it were an incorporated business entity, with all the risks attendant thereto.

18. Genesis EMS, Inc., is an active Texas corporation whose registered agent for service of process is Timothy S. Brumm. The corporation may be served with process at 2003 Medway Drive, Spring, Texas, 77386.

19. Goldstar EMS, LLC is an active Texas limited liability company whose registered agent for service of process is Ralph D. Crall. The corporation may be served with process at 3405 College Street, Beaumont, Texas 77701.

20. Goldstar Emergency Medical Services, Inc., is an active Texas corporation whose registered agent for service of process is Ralph D. Crall. The corporation may be served with process at 3405 College Street, Beaumont, Texas 77701.

21. Life Care Ambulance Service, Inc., is an inactive Texas corporation whose charter was forfeited for failure to pay franchise tax, and whose registered agent for service of process is Craig A. Blackmon. The corporation may be served with process at 10200 Hempstead Rd., Suite 2G, Houston, TX. On information and belief, in spite of the loss of the corporate form, the entity known as Life Care Ambulance Service, Inc., has continued to operate as if it were an incorporated business entity, with all the risks attendant thereto.

22.     Life Line Universal Transport, Inc., is an active Texas corporation whose registered agent for service of process is  Robert Neil Christopher.  The corporation may be served with process at 3010 Rayford Rd., Spring, TX  77386.

23.     Lifeline Ambulance, Inc., is an inactive Texas corporation whose charter was forfeited for failure to pay franchise tax, and  whose registered agent for service of process is Betty L. Redding.  The corporation may be served with process at 9200 IH 35 South, # C1, Austin, TX.  On information and belief, in spite of the loss of the corporate form, the entity known as Lifeline Ambulance Inc., has continued to operate as if it were an incorporated business entity, with all the risks attendant thereto.

24.     Metropolitan Ambulance Service, Inc., is an inactive Texas corporation whose charter was forfeited for failure to pay franchise tax, and  whose registered agent for service of process is Frank Miller.  The corporation may be served with process at 5612 Rampart, Houston, TX.  On information and belief, in spite of the loss of the corporate form, the entity known as Metropolitan Ambulance Service Inc., has continued to operate as if it were an incorporated business entity, with all the risks attendant thereto.

25.     Parkvue EMS, Inc., is an active Texas corporation whose registered agent for service of process is  Jonathan N. Lee Jr.. The corporation may be served with process at 2010 Naomi, Suite A, Houston, Texas, 77054.

26.     Pearl Ambulance Service, Inc., is an active Texas corporation whose registered agent for service of process is Julian Kimble.  The corporation may be served with process at 6020 Jessamine, Suite 304, Houston, Texas. 77081.

27.     Edolia Moore, Inc., is an active Texas corporation whose registered agent for service of process is  Edolia Moore.  The corporation may be served with process at 6945 Burgess Street, Houston, Texas 77021.  Defendant does business as Personal Care EMS.

28.   Prime Care Ambulance Service, Inc., is an active Texas corporation whose registered agent for service of process is William A. Shepherd. The corporation may be served with process at 5720 W. Little York, Suite 395, Houston, TX 77091.

29.   R/M of Texas, GP, Inc., is the General Partner of Rural Metro of Texas, LP and Rural Metro of North Texas, L.P. The latter two entities are both doing business in the state of Texas as Rural/Metro Ambulance, LP.   R/M of Texas, G.P., is a Delaware corporation in good standing with its principal place of business listed as 2015 McKenzie, # 115, Carrollton, Texas, 75006, and with its Principal office at 8401 E. Indian School Road, Scottsdale, Arizona, 85252.   Rural Metro of Texas, LP, and Rural Metro of North Texas, LP, are both Delaware Limited Partnerships in good standing with no listed principal place of business. All three entities may be served with process through the CT Corporation System, 350 N. St. Paul Street, Dallas, Texas, 75201.

30.   Intercare Health Services, Inc.,  is an active Texas corporation whose registered agent for service of process is  Igor Baranovski. The corporation may be served with process at 6610 Harwin Drive, Suite 202, Houston, Texas.  Intercare Health Services Inc., does business as Transcare EMS.

31.   Trans Vital Ambulance Inc., is an active Texas corporation whose registered agent for service of process is Emmitt T. Walton, The corporation may be served with process at 11300 South Post Oak Road, Suite 204, Houston, TX  77035.

32.   White's Ambulance Service, Inc., is an active Texas corporation whose registered agent for service of process is Kenneth R. White. The corporation may be served with process at 13194 Veterans Memorial Drive, Houston, TX 77014.

33.   Ultimate EMS Ambulance Service, Inc., is an active Texas corporation whose registered agent for service of process is Sunday A. Igiebor. The corporation may be served with process at 6352 Windswept Lane # 69, Houston, TX  77057.

34.    Defendants Ultimate EMS Ambulance Service Inc., White's Ambulance Service Inc., Trans Vital Ambulance Inc., Intercare Health Services, Inc., R/M of Texas, GP (and affiliated corporate entities of Rural/Metro of Texas and Rural/Metro of North Texas, LPs, ), Prime Care Ambulance, Edolia Moore, Inc., Pearl Ambulance Service, Parkvue EMS, Metropolitan Ambulance Service, Inc., Lifeline Ambulance, Inc., Life Line Universal Transport, Inc., Life Care Ambulance Service, Inc, Goldstar Emergency Medical Services Inc., Goldstar EMS LLC, Genesis EMS Inc., Express Care Ambulance Service, Inc., Excell EMS Inc., Excell Ambulance Corp., Enterprise Ambulance Inc., Emerald Medical Services, Inc., K&K Best Care Ambulance Services Inc., Economic Protection Strategies, Inc., American EMS, Inc., American Medi-Coach, Alliance Ambulance, Inc., American Medical Response, Inc., and Laidlaw Medical Transportation, Inc., are all hereinafter referred to at various times as "THE AMBULANCE DEFENDANTS."

35.    HCA Health Services  of Texas, Inc., is an active Texas corporation whose registered agent for service of process is  The Prentice Hall Corporation System. The corporation may be served with process at 800 Brazos, Austin, Texas 78701. HCA does business as Spring Branch Memorial Hospital, Gulf Coast Hospital, Rio Grande Regional Hospital, Houston International Hospital, Northshore Medical Plaza, Doctors Hospital, West Houston Heart Institute, HCA West Houston Medical Center, and  HCA West Houston Medical Center Skilled Nursing Unit.

36.    The Methodist Health Care System is an active Texas corporation whose registered agent for service of process is  R. G. Girottto.  The corporation may be served with process at 6565 Fannin St., MS D200, Houston, Texas 77030.  The Methodist Health Care System does business under its own name and the names of "The Methodist Hospital System,"  and "Methodist Health System."  With

respect the to claims made in this complaint, the Methodist Hospital System consists of Citizens Medical Center, Victoria, Texas, Diagnostic Center Hospital, Houston, Texas, The Institute for Rehabilitation and Research, San Jacinto Methodist Hospital, The Methodist Hospital, and Methodist Health Center Sugarland, Texas.

37.     HNMC, Inc, doing business as Houston Northwest Medical Center, Inc., is an active Texas corporation whose registered agent for service of process is The CT Corporation System. The corporation may be served with process at 350 N. St. Paul Street, Dallas, Texas  75201.

38.     Memorial Hermann Healthcare System, is an active Texas corporation whose registered agent for service of process is V. Randolph Gleason. The corporation may be served with process at 7737 Southwest Freeway, Suite 200, Houston, Texas, 77074. With respect to the claims made in this complaint, the Memorial Hermann Healthcare System consists of Memorial Hospital Southeast, Memorial Hospital Southwest, Memorial Hospital Memorial City, Memorial Hospital Northwest, Memorial Pasadena, Memorial Spring Shadow Glen, Memorial Rehab Hospital, Memorial Hospital the Woodlands, and Memorial Spring Shadow Pines.

39.     St. Lukes Episcopal Hospital, is an active Texas corporation (non profit) whose registered agent for service of process is Teska Moreau. The corporation may be served with process at 6720 Bertner, Houston, TX.

40.     The Sisters of Charity of the Incarnate Word, Houston, is an active Texas corporation not for profit, whose registered agent for service of process is Corporation Service Company, 120 East Fourth Street, Little Rock, AR 72201. An alternate service address is, on information and belief 2600 North Loop West, Houston, Texas. On information and belief St. Joseph Hospital, 19819 Labranch, Houston Texas, 77002 is a wholly-owned not-for-profit subsidiary of The Sisters of Incarnate Word of Houston.

41.     The Institute for Rehabilitation and Research (sometimes abbreviated as TIRR) is an active Texas corporation not for profit, whose registered agent for service of process is Kathleen A. DeSilva.  The corporation may be served with process at 1333 Moursund, Houston, TX, 77030.

42.     Texas Children's Hospital is an active Texas corporation, not for profit, whose registered agent for service of process is Mark A. Wallace.  The corporation may be served with process at 6621 Fannin, Houston, Texas.

43.     TIRR Lifebridge is an active Texas corporation not for profit,  whose registered agent for service of process is  Mary Koch.  The corporation may be served with process at 5100 Travis, Houston, Texas  77002.

44.     Woman's Hospital of Texas, Incorporated, is an active Texas corporation whose registered agent for service of process is the Prentice Hall Corporation System. The corporation may be served with process at 800 Brazos, Austin, Texas, 78701.

45.     American Transitional Hospitals, Inc., is the parent corporation of ATH Heights, Inc., which is the successor to American Transitional Care Centers of Texas, Inc. The latter was doing business as American Transitional Hospital of Houston, West.   American Transitional Hospitals, Inc., is an active Texas corporation whose registered agent for service of process is Corporation Service Co.  The corporation may be served with process at 800 Brazos, Austin, Texas, 78701.

46.     Houston Specialty Hospital, Inc., is an active Texas corporation whose registered agent for service of process is The CT Corporation System,  The corporation may be served with process at 350 N. St. Paul Street, Dallas, TX  75201.

47.     Baytown Medical Center, Inc., is an active Texas corporation whose registered agent for service of process is C.T. Corporation System, The corporation may be served with process at 811 Dallas Ave, Houston, TX  77002.  Baytown Medical Center Inc., does business as Baycoast Medical Center, Gulf Coast Hospital, and was formerly known as Champion Healthcare Baytown, Inc.

48.   Charter Behavioral Health System of Southeast Texas, LP is a Delaware
      Corporation in good standing whose agent for the service of process is the
      Corporation Service Company.  The corporation may be served with process at
      800 Brazos, Austin, TX  78701.  It has done business as Charter Behavioral
      Health System of Kingwood, LP.

49.   Rivendell Houston Psychiatric Center, Inc., is an active Texas corporation whose
      registered agent for service of process is the Corporation Service Company.  The
      corporation may be served with process at 800 Brazos, Austin, Texas, 78701.
      Rivendell Houston Psychiatric Center, Inc., has done business as Gulf Pines
      Hospital and is wholly owned by the Vendell Healthcare Inc, a Delaware
      corporation.

50.   Six Flags Theme Parks, Inc., is an active Delaware corporation whose registered
      agent for service of process is Corporation Service Company.  The corporation
      may be served with process at 800 Brazos, Austin, Texas, 78701.  At all times
      herein Six Flags Theme Parks, Inc., did business as Astroworld.

51.   Altman Nursing, Inc., is an active Nevada corporation whose registered agent for
      service of process is Mark E. Bennett.  The corporation may be served with
      process at 4265 Kellway Circle, Addison, TX  75244.  At all times herein it did
      business as Herman Park Manor and Alta Vista Nursing Center.

52.   In addition to the above-named defendants, MD Anderson Cancer Center,
      Rosewood Hospital, Sharpstown General Hospital, Diagnostic Hospital, Park
      Plaza Hospital, Harris County Hospital District, Healthsouth Clearlake Regional
      Medical Center, Cypress Fairbanks Medical Center, Hallmark Nursing Home,
      Green Acres Humble, Northline Manor Nursing Home, Autumn Hills Sugarland
      Nursing Home, Spectrum Comprehensive Care, Northeast Medical Center
      Hospital, Bayou Manor Nursing Home and Recovery Connections, herein named
      as defendants, participated in the schemes to defraud Medicare and/or bill false

claims during the time periods mentioned in the complaint, however, their service of process and ownership information could not be located in a timely manner. Relator reserves the right to amend to add additional defendants as necessary.

53.    Defendants MD Anderson Cancer Center, Rosewood Hospital, Sharpstown General Hospital, Diagnostic Hospital, Park Plaza Hospital, Harris County Hospital District, Healthsouth Clearlake Regional Medical Center, Cypress Fairbanks Medical Center, Hallmark Nursing Home, Northeast Medical Center Hospital, Green Acres Humble, Northline Manor Nursing Home, Autumn Hills Sugarland Nursing Home, Spectrum Comprehensive Care, Bayou Manor Nursing Home and Recovery Connections, along with HCA Health Services of Texas, Inc., The Methodist Health Care System, HNMC, Inc., Memorial Hermann Healthcare System, St. Lukes Episcopal Hospital, Sisters of Charity of the Incarnate Word, Houston, The Institute for Rehabilitation and Research, Texas Children's Hospital, TIRR Lifebridge, Woman's Hospital of Texas, Incorporated, American Transitional Hospitals, Inc, Houston Specialty Hospital, Inc., Baytown Medical Center, Inc., Charter Behavioral Health System of Southeast Texas, LP, Rivendell Houston Psychiatric Center, Inc., Six Flags Theme Parks, Inc., and Altman Nursing, Inc., are sometimes hereinafter referred to as THE INSTITUTIONAL DEFENDANTS.

## BACKGROUND FACTS

54.    Daniel Block went to work for Allen Stat Care on 9/7/94. Allen Stat Care was a predecessor of American Medical Response and Laidlaw Medical Transportation, Inc.

55.    Initially Mr. Block was hired as communications supervisor from another competing large ambulance company, Rural/Metro. In 1994 seven private

companies merged into one company and Allen Stat Care was merged with that company to create a large ambulance service – Ameristat. Shortly after the larger company was created, the entire marketing department left, and Dan was hired to work under a man named James (Jim) Laney.

56.   Relator Block's job, at this point, was to go out and shake hands and smile. He made the contacts and prepared the corporations for contact by Mr. Laney who would attempt to have these entities contract with Allen Stat Care's new corporate entity, Ameristat, for exclusive provision of ambulance services.

57.   In 1996, a new company, Medtrans, bought Ameristat. Medtrans was the largest ambulance provider in the United States. Relator Block and his supervisor, Laney, kept performing business as usual and negotiating contracts with every one of the hospitals and nursing homes. Medtrans added three additional account representatives to the marketing staff.

58.   But as the ambulance business in the Houston area became more competitive, Block began to be asked to do things about which he felt uncomfortable. At one point Block was directed to purchase a 32 inch TV for nursing home as a "reward" for signing an exclusive contract with Medtrans. Block did as he was instructed and purchased the television.

59.   Block had the television in his car and was about to give it to nursing home. The day before he was to do that, the news program Inside Edition, aired an undercover study on ambulance practices in Houston. The program did not focus on Medtrans, but it included undercover video of similar practices.

60.   As a result of the television program, and in response to the issues raised therein, Block was told by Laney not to deliver the television and the television remained in his office for 8 months until the company raffled it away to employees that Christmas.

61.    The person who made the decision not to give away the TV to the nursing home
       was the local manager, Steve Bourasssa

62.    Mr. Block had a budget as account rep of $500 a week that he was directed to
       spend on hospitals and nursing homes.   In his capacity as marketing
       representative, Block was directed to take goods to hospitals and nursing homes
       that used Medtrans to transport patients.   It was a frequent occurrence to walk
       into a hospital with party trays and lunch.   Every month the firm purchased $2000
       worth of candy from Sam's Warehouse and employees would bag it up and leave
       a bag of candy at nursing station whenever they would pick up a patient at that
       nursing home.

63.    Medtrans employees derisively referred to this as "Feeding the animals for
       business."   It was the general perception of the Medtrans employees and
       managers that a firm that didn't "feed the animals," didn't get the business.

64.    Medtrans was not alone in these practices.   The AMBULANCE DEFENDANTS
       other than Medtrans engaged in similar kickback schemes including lottery tickets
       (scratchers).   For example, one firm gave out business cards to nurses who called
       for ambulance service.   Whenever a nursing home or hospital nurse would call
       that ambulance company, the paramedic heading the transfer would punch the
       business card given to the nurse.   After a nurse had 10 punches on her card she
       got a gold watch.

65.    The 1996 episode of Inside Edition, however, caused Mr. Block to reexamine his
       business practices.   He went to a Texas Ambulance Association seminar on fraud
       and abuse issues and began to share with Medtrans management the information
       he was hearing about the antikickback rules.

66.    Block told the company that they had to stop "feeding the animals," giving away
       lunches, and giving away television sets.

67.     At that point, Medtrans started losing business to other AMBULANCE
        DEFENDANTS who would do the things described above including the provision
        of candy, kickbacks, items of value, and personal gifts in excessive amounts.

68.     Coincident with and prior to the "feeding the animals" and similar inducements
        offered to the nursing homes and hospitals, the company, Medtrans, and its
        successor in interest, American Medical Response, undertook to obtain exclusive
        contracts with local nursing homes and hospitals in the Houston area.

69.     The purpose behind the exclusive contract with the nursing home or hospital was
        to provide a deeply discounted rate to the hospital or nursing home for transfers
        for which they were financially responsible in exchange for an exclusive right to
        transport patients covered by Medicare, Medicaid, CHAMPUS, and private
        insurance from the hospital or nursing home.

70.     Using a spreadsheet that identified normal volumes of Medicare[1], Medicaid,
        Privately Insured, and Privately paid patients, the firms calculated the ambulance
        rates that AMR (or its predecessor) could give to the nursing homes.

71.     Specifically, this spreadsheet broke down into columns the number of ambulance
        calls in each category, and the normal reimbursement.  An example is shown
        below:

---

[1] For purposes of the analysis undertaken by American Medical Response, CHAMPUS was considered part
of Medicare for reimbursement purposes because of the similarity of payments made.

```
Nursing Home: XYZ

            Medicare  Medicaid Private Ins. Private Pay Institutional

# Calls        100       50        10         4        11    Total Other
Avg Reim       350      350       500        500

Total        35000    17500      5000      2000                    59500

                          Less Operating Costs                     35000


Total Profit based on all runs:                                    24500
If value exceeds $15,000, may charge anything
If value is less than $15,000, must charge amount to equal $15,000
```

72.  Thus, if a nursing home or hospital, was generating sufficient Medicare, CHAMPUS and Medicaid business, AMR could cut the rates on each transfer for which the home was financially responsible down to a very low figure (usually between $8 and $60, depending on volume) and in spite of this deep discounting, because of the Medicare, Medicaid and CHAMPUS volumes, still be exceptionally profitable.

73.  Based on this kind of assessment, AMR consistently set nursing home and hospital ambulance rates between $30 and $80 per run with two significant exceptions: Memorial Hospital System (Now Memorial-Hermann Hospital System) and Methodist Hospital System.

74.  For all transfers with the Methodist Hospital System AMR billed a below-cost rate of $60 per transfer. Select Specialty Health Care Systems paid $25 per transfer.  Within the Memorial Hospital System, AMR billed a capitated rate of approximately $1,800 per month, irrespective of the volume of calls.

75.  For one institutional defendant, Six Flags Theme Parks operating as Astroworld, the ambulance service was repaid with six free admissions to Astroworld for all

runs originating out of the park. This exclusive arrangement allowed AMR to capture all Medicare, Medicaid and CHAMPUS transfers from Astroworld for a significantly-below-market price.

76. When Mr. Block later regressed the statistical data in the AMR data base to determine how much each transfer was actually costing the Memorial system on average. That amount came to about $8.50 per transfer.

77. At the same time that Memorial, Methodist, and other facilities were obtaining rates between $8.50 and $60 per transfer, the "Usual and Customary Rate" billed to Medicare, CHAMPUS and Medicaid was $320.00 plus $9.20 per loaded mile. The average reimbursement for a Medicare, Medicaid or CHAMPUS run was between $500 and $600 by the time additional line item charges (oxygen, EKG, pulse oximetry, and other monitoring equipment) were added on. Rates for ambulance services are set by the Secretary of HHS under 42 USC § 1395l.

78. AMR did not charge additional line items to Memorial, Methodist, or the other INSTITUTIONAL DEFENDANTS.

79. Between February 10, 1994, and the present, AMR, and its predecessor companies, routinely charged less than the actual cost of providing a transport to the INSTITUTIONAL DEFENDANTS named above in exchange for an exclusive contract to carry all patients out of that facility by ambulance.

80. Between February 10, 1994 and the present, the other AMBULANCE DEFENDANTS exclusive of AMR used similar pricing methods and exclusive contracts to undercut AMR (and each other) with nursing homes and hospitals frequently paying less than $30 per transport in the Houston area for their financially-responsible transports.

81. The net effect of this exclusive arrangement is that it allowed the AMBULANCE DEFENDANTS to capture all the Medicare, CHAMPUS and Medicaid revenue

while providing a kickback in the form of a 50% to 97% discount on services to
the referring facility.

82.    In December, 1997, Mr. Block became aware of the February 11, 1992 letter from
       the Department of Health and Human Services, Office of General Counsel,
       outlining the department's position on ambulance discounting practices.

83.    That letter noted that certain "safe harbor" provisions existed for ambulance
       discounts and noted further that "[t]he safe harbor provision addressing discounts,
       in accordance with the statute [42 USC § 1320a-7b(b)(3)(A)] protects discounts
       and other reductions in price that are 'properly disclosed' and 'appropriately
       reflected' in the costs or charges billed to the Medicare and Medicaid programs."

84.    The letter quoted the preamble to the discount regulations stating "[e]ven where
       the particular item that is being given away may result in a more effective means
       of delivering the supplies to the health care provider, these types of 'discounts'
       cause problems because they often shift costs among reimbursement systems or
       distort the true costs of all the items.  As a result it may be difficult for the
       Medicare and Medicaid programs to determine the proper reimbursement levels."

85.    The letter concluded with another quotation: "Finally, it is noted that where the
       discount in question does not qualify as a discount under this provision, no safe
       harbor protection applies."

86.    In September of 1998, Block became aware of an article written by David Werfel,
       Esq., in the Ambulance Industry Journal.  This article explained that discounts
       had to reflect an "arms length" transaction.  It quoted an OIG Fraud Alert stating:
       "However, 'fair market value' must reflect an arms length transaction which as
       not been adjusted to include the additional value which one or both of the parties
       has attributed to the referral of business between them."

87.    Once Mr. Block noted the Antikickback regulations, and began to study them, he
       began a campaign to clean up marketing practices in his company but the

company (AMR) still didn't make any changes in the ambulance rates. Importantly, the firm was charging only $30 to $50 for transfers from some hospitals and nursing homes and Memorial and Methodist enjoyed deeper discounts based on the volume of their Medicare, Medicaid and CHAMPUS patients.

88.     Other forms of kickbacks were problematic for Block and the way in which AMR (and presumably other AMBULANCE DEFENDANTS) conducted business. Among the most important was the "charitable contribution as kickback" best illustrated by the arrangement between Medtrans (now AMR) and Houston Northeast Medical Center Hospital Foundation and that organizations yearly "Gala." AMR purchased a table at the Houston Northeast Medical Center Hospital Foundation Gala for $10,000, and executives of the company all bought items at the silent auction there. The communication between Houston Northeast Medical Center Hospital administration and the business office at Medtrans (now AMR) left little doubt that continued exclusivity of transport depended on continued support of the hospital foundation. Once AMR did not participate in the "Gala" then Houston Northeast Medical Center Hospital cancelled the contract within 30 days.

89.     Beginning in February of 1999, Mr. Block initiated a campaign to discontinue the contract with some facilities – most notably the Methodist Health System – because he had concluded the agreements violated anti-kickback regulations. Though not an attorney, Mr. Block had a common sense understanding of the statutes. Mr. Block's analysis was that to offer a service at a price below operating costs in exchange for an exclusive right to all Medicare, Medicaid and CHAMPUS patients was a kickback proscribed by the Antikickback statute and the regulations issued thereunder. He felt that these exclusive contracts in return

for lower price arrangements were clearly outside the safe harbors provided by
HCFA.

90.     On or about March 31, 1999, Mr. Block's superior, Jeff McCollom, was in the
process of signing termination letters to all Houston Hospitals where AMR still
had a contract when corporate executives from AMR fired McCollom. Mr. Block
was told to discontinue sending out termination letters.

91.     Block stridently disagreed with the decision to suspend termination proceedings,
and working through a compliance team, later in the summer Mr. Block was able
to terminate several AMR contracts and recall the bid made to Methodist Hospital
because, in his estimation, it was an unlawful kickback scheme.

92.     However, during 1999, while Block was attempting to educate the consumers of
his services (hospitals and nursing homes) the AMBULANCE DEFENDANTS
other than AMR began engaging in price-cutting and other competitive measures
to secure business that AMR was losing.

93.     The AMBULANCE DEFENDANTS were offering certain nursing homes and
hospitals rates as low as $15 per transfer.

94.     As a result of Block's attempt to place AMR in compliance with Antikickback
regulations, and his refusal to negotiate $25 per transfer contracts, AMR lost
eighty percent (80%) of its business in 1999.

95.     Defendant Prime Care Ambulance Service, on information and belief, offered
Methodist Hospital a significantly lower rate than the $60 per transfer rate
provided by AMR.

96.     The AMBULANCE DEFENDANTS all provided transfers to and from nursing
homes, hospitals, physician's offices, radiology groups, and other healthcare
venues for prices less than it cost to perform the service on the expectation that it
would result in increased Medicare and Medicaid transfers.

97.  After a meeting in October1999, Dan was personally threatened by Roderick R. Willform inasmuchas he was told that other providers would "hold him accountable" if they lost contracts because of the education that AMR and Dan Block were doing in the hospitals and nursing homes.  Additionally Dave Taylor, the COO of Genesis Ambulance Company and one of the named Ambulance Defendants herein, told Mr. Block that "if you continue to pursue educating the hospitals you're going to drive me out of business; I will hold you personally accountable for that."

98.  The eighty percent decline in business was due mainly to below cost rates offered by the competition, specifically from Genesis EMS, Pearl Ambulance Service, Prime Care Ambulance Service, Rural/Metro Ambulance Service, Alliance Ambulance Inc., American EMS, American Medi-Coach, Assured Ambulance, K&K Best Ambulance Service, Emerald Medical Services, Enterprise Ambulance, Excell EMS, Express Care Ambulance, Goldstar EMS LLC, Life Line Universal Transport, Lifeline Ambulance Services, Medic-Care EMS, Medxpress, Metropolitan Ambulance Service, New Edition Ambulance Service, Thomas Ambulance Service, Transcare, Transvital, Trans Star EMS, United Ambulance, Ultimate EMS Ambulance, and Whites Ambulance Service.  Genesis is the leading cut-rate ambulance provider in Houston – its highest rate is $125 per transfer.

99.  The kickback arrangements between THE INSTITUTIONAL DEFENDANTS and the AMBULANCE DEFENDANTS violate 42 USC § 1320a-7b(b)(2) and 42 USC § 1320a-7b(b)(1) prohibiting an individual or entity from receiving or paying any kickback, bribe, or rebate in cash or in kind to obtain referrals of patients under the Medicare, Medicaid, and CHAMPUS programs.

100.  In addition to the violation of the penal statute, the payment of these kickback and bribes violates the False Claims Act inasmuchas each request for payment under

Medicare carries with it an explicit promise of truthfulness and an implicit promise that the provider has complied with all applicable billing and regulatory provisions in the statutes.

101.    The AMBULANCE DEFENDANTS, in representing to private and federal health care programs that their usual and customary charges for ambulance services are in the $400 to $600 per trip range, while at the same time charging preferred referral sources these same services rates that are between 1.3% and 2.0% is making representations that are inherently false and fraudulent.

102.    The AMBULANCE DEFENDANTS, by billing Medicare, Medicaid and CHAMPUS for services that are marked up between 5000% and 7500% over what those same services are provided to private parties is inherently false and fraudulent.

103.    Accepting, appreciating, and willingly participating in the negotiation of rates for ambulance services that are significantly below market value places the INSTITUTIONAL DEFENDANTS in the position of making false representations in their Medicare Cost Reports when they certify therein that they have complied with all Medicare, Medicaid and CHAMPUS regulations.

104.    Federal Regulations (42 C.F.R. § 1001.701) proscribes billing Medicare, Medicaid or CHAMPUS for services in excessive amounts. Billing private parties $8 per ambulance transfer while billing Medicare, Medicaid and CHAMPUS $400 - $600 for the same transfer is inherently excessive.

105.    On information and belief, the same practices that are being used by AMR in Texas are being used by AMR and its subsidiary companies in the other 24 states, including Missouri, where AMR does business.

**COUNT I**
**VIOLATION OF 31 U.S.C. § 3729(A)(1)**
**A CAUSE OF ACTION ASSERTED**
**AGAINST THE AMBULANCE DEFENDANTS**
**FOR SUBMISSION OF FALSE INVOICES AT AMOUNTS**
**HIGHER THAN USUAL AND CUSTOMARY**
(Billing for Ambulance Services)

106.   Relator restates, repleads, and realleges and incorporates by reference the contents of paragraphs 1-105 as if fully set forth herein.

107.   In Count I defendants means THE AMBULANCE DEFENDANTS, including AMR, and not the INSTITUTIONAL DEFENDANTS.

108.   Defendants jointly and severally submitted or caused others in their employ to submit claims for reimbursement to Medicare, Medicaid, and CHAMPUS in Texas and 24 other jurisdictions in the United States.

109.   The claims were false in that they purported to show that the amount charged was the "Usual and Customary" amount when in fact the usual and customary amount, if calculated on the basis of the discounts and volumes offered to other providers would  be significantly less.

110.   Defendants, jointly and severally knew that the invoices submitted to Medicare, Medicaid and CHAMPUS were false in that:

    110.1.     Defendants either knew directly that the claims were false; or

    110.2.     Acted in deliberate ignorance of the truth or falsity; or

    110.3.     Acted in reckless disregard of the truth or falsity of the claims.

111.   As a result of billing for ambulance services at an amount higher than the true "usual and customary" amounts, tens of thousands of ambulance transfers were billed to Medicare, Medicaid and CHAMPUS in an amount greatly in excess of what should reasonably have been billed.

112.   On the basis of the foregoing, the Treasury of the United States of America sustained damaged in an amount to be calculated and proved at trial.

WHEREFORE, Relator Dan Block demands judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the United States Government, for a civil penalty against the defendants each jointly and severally in an amount between Five Thousand Dollars ($5,000.00) and Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. § 3729, et seq., for the maximum amount allowed to the Qui Tam Plaintiff under 31 U.S.C. § 3730(d) of the False Claims Act or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

## COUNT II
## VIOLATION OF 31 U.S.C. § 3729(A)(1)
## A CAUSE OF ACTION ASSERTED
## AGAINST THE AMBULANCE DEFENDANTS
## FOR SUBMISSION OF FALSE INVOICES
(Billing for Ambulance Services)

113.    Relator restates, repleads, and realleges and incorporates by reference the contents

of paragraphs 1-112 as if fully set forth herein.

114.    In Count II defendants means THE AMBULANCE DEFENDANTS, including

AMR, and not the INSTITUTIONAL DEFENDANTS.

115.    Defendants jointly and severally submitted or caused others in their employ to

submit claims for reimbursement to Medicare, Medicaid, and CHAMPUS in

Texas and 24 other states in the United States.

116.    The claims were false in that the person signing the claim form on behalf of the

AMBULANCE DEFENDANTS represented that the charges were a truthful

when they in fact did not represent the "best price" to Medicare, Medicaid or

CHAMPUS in violation of Medicare "best price" and "excessive price" billing

regulations.

117.    Defendants, jointly and severally knew that the invoices submitted to Medicare,

Medicaid and CHAMPUS were false in that:

    117.1.    Defendants either knew directly that the claims were false; or

    117.2.    Acted in deliberate ignorance of the truth or falsity; or

    117.3.    Acted in reckless disregard of the truth or falsity of the claims.

118.    As a result of billing for ambulance services at an amount higher than the true

"best price" amounts, tens of thousands of ambulance transfers were billed to

Medicare, Medicaid and CHAMPUS in an amount greatly in excess of what

should reasonably have been billed.

119.   On the basis of the foregoing, the Treasury of the United States of America

sustained damaged in an amount to be calculated and proved at trial.

WHEREFORE, Relator Dan Block demands judgment against the defendants

jointly and severally in the amount of three times the overcharges submitted for

payment to the United States Government, for a civil penalty against the

defendants each jointly and severally in an amount between Five Thousand

Dollars ($5,000.00) and Ten Thousand Dollars ($10,000.00) for each violation of

31 U.S.C. § 3729, et seq., for the maximum amount allowed to the Qui Tam

Plaintiff under 31 U.S.C. § 3730(d) of the False Claims Act or any other

applicable provision of law, for its court costs and reasonable attorneys fees at

prevailing rates, for expenses, and for such other and further relief as this Court

deems meet, just and proper.

**COUNT III**
**VIOLATION OF 31 U.S.C. § 3729(A)(2)**
**CREATION OF FALSE RECORDS TO SUPPORT FALSE INVOICES**
(Billing for Ambulance Services)

120.   Relator restates, repleads, and realleges and incorporates by reference the contents

of paragraphs 1-119 as if fully set forth herein.

121.   In billing the Medicare, Medicaid and CHAMPUS programs for ambulance

services as outlined in Counts I & II, the AMBULANCE DEFENDANTS jointly

and severally created false records in Texas and in the 24 other jurisdictions,

including Missouri, where AMR does business.  The records were false in the

following respects:

121.1.   Billing forms showed "usual and customary" charges that were clearly in

excess of the Usual and Customary Charges as those charges are defined

by Medicare, Medicaid & CHAMPUS.

121.2.   Medicare, Medicaid and CHAMPUS billing forms were prepared with false certifications that the services provided had been provided in compliance with all regulatory and statutory guidelines.

121.3.   Medicare, Medicaid and CHAMPUS billing forms were prepared that purported to show that these federal health care programs were getting the "best price" as required by regulation when in fact they were being billed an amount 50 to 75 times the amount of the "best price" provided to the INSTITUTIONAL DEFENDANTS.

121.4.   AMR and the AMBULANCE DEFENDANTS knew that the omission of the actual charges billed to the INSTITUTIONAL DEFENDANTS was material to the government's rate setting decision and chose to omit that information.  The AMBULANCE DEFENDANTS and AMR knew that the government relied upon the invoices and other false statements in their regulatory role.

122.   As a result of billing using higher than usual and customary rates, and higher than "best price" rates and the creation of the false records, hundreds of thousands of therapy units were billed to Medicare, Medicaid and CHAMPUS that did not reflect the price that should have been paid.

123.   On the basis of the foregoing, the Treasury of the United States of America sustained damage in an amount to be calculated at trial.

WHEREFORE, Relator Dan Block demands judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the United States Government, for a civil penalty against the defendants each jointly and severally in an amount between Five Thousand Dollars ($5,000.00) and Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. § 3729, et seq., for the maximum amount allowed to the Qui Tam Plaintiff under 31 U.S.C. § 3730(d) of the False Claims Act or any other applicable provision of law, for its court

costs and reasonable attorneys fees at prevailing rates, for expenses, and for such
other and further relief as this Court deems meet, just and proper.

**COUNT IV**
**VIOLATION OF 31 U.S.C. § 3729(A)(3)**
**AGAINST ALL DEFENDANTS NAMED**
**CONSPIRACY TO SUBMIT FALSE CLAIMS**
(Ambulance Care Billing Practices & Hospital Billing Practices)

124.   Relator restates, repleads, and realleges and incorporates by reference the contents
       of paragraphs 1-123 as if fully set forth herein.

125.   The INSTITUTIONAL DEFENDANTS and the AMBULANCE DEFENDANTS
       jointly and severally agreed to a plan whereby the INSTITUTIONAL
       DEFENDANTS, on those patients for whom they had financial responsibility,
       would be billed for ambulance transports at a rate that was between 1.3% and
       20% of the average cost of an ambulance transfer billed to Medicare.

126.   The INSTITUTIONAL DEFENDANTS and the AMBULANCE DEFENDANTS
       further agreed that the INSTITUTIONAL DEFENDANTS  would use whichever
       of the AMBULANCE DEFENDANTS selected as their contracted provider for
       all transports from that facility to any other facility.

127.   This agreement had, at is core, an unlawful objective which was to reduce the
       costs of ambulance transfers to the hospital in exchange for the exclusive right to
       transport Medicare, Medicaid and CHAMPUS patients from the facility.

128.   After entering into this Conspiracy and agreement, the parties took steps to
       conceal the nature and extent of the agreement from HCFA and the Office of
       Program Integrity.

129.   After entering into this conspiracy and agreement, the INSTITUTIONAL
       DEFENDANTS falsely certified on their Medicare  and Medicaid Cost Reports,
       the documents which establish the rates and amounts that they will be paid for

providing healthcare. Specifically, the INSTITUTIONAL DEFENDANTS certified that they complied with all federal requirements for participation in the Medicare and CHAMPUS programs and with all federal and state requirements for participation in the Medicaid program when they were not, in fact, in compliance.

130. The AMBULANCE DEFENDANTS conspired to hide the actual costs by submitting full-cost bills for payment to the INSTITUTIONAL DEFENDANTS.

131. The INSTITUTIONAL DEFENDANTS conspired to hide the actual costs paid, and sought to conceal the nature and extent of the discounts by paying either the contract rate for each transfer (e.g., $60 per transfer or the monthly capitated rate of $1800) and acquiesced in and paid the false invoice submitted to them.

132. The INSTITUTIONAL DEFENDANTS and the AMBULANCE DEFENDANTS and others all took acts in furtherance of the conspiracy, including but not limited to:

    132.1. Taking the actions set forth above in paragraphs 128 – 131.

    132.2. Falsely creating internal records that allowed them to track the accounts receivable at the lower rates than those billed on the actual invoices.

    132.3. Communicating ambulance transfer policies in the INSTITUTIONAL DEFENDANTS.

    132.4. The AMBULANCE DEFENDANTS provided transfers to the INSTITUTIONAL DEFENDANTS in amounts and at billing rates as set forth in their unlawful agreements.

133. At the time the defendants took the acts complained of above, they did so with the intent to defraud the government.

134. As a result of the conspiracy and the billing for ambulance services using amounts in excess of the "Best Price" and amounts in excess of the "usual and customary" amounts, as well as the creation of the false records, tens of thousands of

ambulance transfers were billed to Medicare, Medicaid and CHAMPUS that did not reflect the true costs and were in amounts grossly in excess of what should have been charged.

135.     On the basis of the foregoing, the Treasury of the United States of America sustained damage in an amount to be determined and proved at trial.

WHEREFORE, Relator Dan Block demands judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the United States Government, for a civil penalty against the defendants each jointly and severally in an amount between Five Thousand Dollars ($5,000.00) and Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. § 3729, et seq., for the maximum amount allowed to the Qui Tam Plaintiff under 31 U.S.C. § 3730(d) of the False Claims Act or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

### COUNT V
### VIOLATION OF 31 U.S.C. § 3729(A)(7)
### REVERSE FALSE CLAIMS AGAINST AMR AND LAIDLAW ONLY
(Ambulance Care Billing Practices & Hospital Billing Practices)

136.     Relator restates, repleads, and realleges and incorporates by reference the contents of paragraphs 1-135 as if fully set forth herein.

137.     This count is asserted only against AMR and Laidlaw Medical Transportation, Inc., only.

138.     From at least December, 1997 through the present, defendants Laidlaw and AMR have known, because of their Compliance Team and the activities of Relator Block that their contracts with the INSTITUTIONAL DEFENDANTS,  and especially Methodist Health System and Memorial-Hermann Health System in Houston were contrary to law and public policy and were unlawful, illegal, wrongful, criminal, and subject to sanction.

36

139. Since December, 1997, AMR has been under a continuing duty not to submit false claims for ambulance services which it knew it was submitting because of the activities of Dan Block.

140. In spite of a patently unlawful billing practice, and knowledge that the practices violated federal law, Laidlaw and AMR did not terminate the practices until the summer of 1999.

141. Laidlaw and AMR knew that their invoices, and other statements and representations relied upon by the government in its rate setting role, were false in that they did not reflect the true usual and customary charges.

142. Laidlaw and AMR knew that the government would rely on those representations in its rate-setting role, and that the reliance would cause the government to pay claims at a higher rate than it would otherwise pay.

143. At all times herein defendants acted knowingly.

144. Defendants created false records, to wit, false invoices showing that they were billing facilities at the full rate for ALS and BLS transfers.

145. Defendants further used these false invoices to conceal, avoid, or decrease their obligation to repay to the Treasury of the United States the amounts billed to Medicare, Medicaid and CHAMPUS for all ambulance transfers made between December 1997 and the present, which defendants knew were made at excessive rates.

146. On the basis of the foregoing, the Treasury of the United States of America sustained damage in an amount to be determined and proved at trial.

WHEREFORE, Relator Dan Block demands judgment against the defendants jointly and severally in the amount of three times the overcharges submitted for payment to the United States Government, for a civil penalty against the defendants each jointly and severally in an amount between Five Thousand Dollars ($5,000.00) and Ten Thousand Dollars ($10,000.00) for each violation of 31 U.S.C. § 3729, et seq., for the maximum amount allowed to the Qui Tam Plaintiff under 31 U.S.C. § 3730(d) of the False Claims Act or any other applicable provision of law, for its court costs and reasonable attorneys fees at prevailing rates, for expenses, and for such other and further relief as this Court deems meet, just and proper.

Respectfully submitted,

Edward D. Robertson, Jr.   Mobar #27183
Anthony L. DeWitt     Mobar # 41612
BARTIMUS, FRICKLETON & PRESLEY, P.C.
122 E. High Street
Jefferson City, MO 65101
(573) 659-4454
(573) 659-4460 (Fax)
aldewitt@sprintmail.com
chiprob@earthlink.net

ATTORNEYS FOR RELATORS

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues for which a jury is available.

Respectfully submitted,

_____

Edward D. Robertson, Jr.        Mobar #27183
Anthony L. DeWitt               Mobar # 41612
BARTIMUS, FRICKLETON & PRESLEY, P.C.
122 E. High Street
Jefferson City, MO 65101
(573) 659-4454
(573) 659-4460 (Fax)
aldewitt@sprintmail.com
chiprob@earthlink.net

ATTORNEYS FOR RELATORS

## CERTIFICATE OF SERVICE

The undersigned certifies that on this _____ day of _____, 2000, a copy of the foregoing

Complaint and the required  disclosure statement was served on the individuals below by

hand delivery to Larry Miller, Esq., and by placing the same in the United States Mail,

first class postage affixed, and addressed to Janet Reno, Esq., at the address below:

Larry Miller
Assistant United States Attorney for the Central Division
 of the Western District of Missouri.
United States Federal Courthouse
Jefferson City, MO

Hon. Janet Reno, Esq.
Attorney General of the United States
5111 Main Justice Building
10th & Constitution Ave. N.W.
Washington, DC 20210

Attorney for Relator